UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
NI, YAN YUN, A# 78-711-587, and
YANG, TONG XIANG, A# 23-466-666

                              Plaintiffs,

        - against -                                 Case No. 07cv 5810 (MGC)(GWG)

                                                    ECF CASE

ANDREA QUARANTILLO,
New York District Director of the United            COMPLAINT
States Citizenship and Immigration Services;
DEPARTMENT of HOMELAND SECURITY;
and U.S. CITIZENSHIP and
IMMIGRATION SERVICE.

                              Defendants.
-----------------------------------------------------------------X

        Plaintiffs, by their attorneys, BRETZ & COVEN, LLP, hereby alleges, upon information

and belief, as follows:

## I.    INTRODUCTION

1.      This action is brought to declare as invalid the Defendants unlawful denial of

the application for asylee relative petition, Form I-730, that was filed by Ni, Yan Yun on behalf

of her husband, Yang, Tong Xiang.  The Plaintiffs seek that the Court order that Mr. Yang be

granted asylee status, or in the alternative, that the Court order the Defendants to render a new

decision utilizing the proper standard of law.

## II.   JURISDICTION

2.      This Court has jurisdiction over both causes of action, pursuant to 28 U.S.C.

§ 1331 (federal subject matter jurisdiction).  Under 28 U.S.C. § 1331, "[t]he district courts shall

have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the

United States."  The Court has jurisdiction under 28 U.S.C. § 1331, because this action arises under the Administrative Procedure Act ("APA") (5 U.S.C. § 555(b)), the Immigration and Nationality Act ("INA") and regulations implementing it (Title 8 of the Code of Federal Regulations ("C.F.R.")), and the due process clause of the Constitution of the United States.  In addition, this Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, because this action arises under 28 U.S.C. § 2201, and seeks a declaration of the rights of Plaintiffs.

3.      This Court has jurisdiction over both causes of action under the APA.  The APA authorizes district courts to review any federal administrative action which "adversely affects or aggrieves" an individual.  5 U.S.C. § 702.  Furthermore, the APA empowers district courts to compel agency action which has been "unlawfully or unreasonably withheld."  5 U.S.C. § 706. United States Customs Immgrations Service ("USCIS"), as an administrative agency, is subject to both 5 U.S.C. § 702 and 5 U.S.C. § 706.  Plaintiff contends that he has been "aggrieved" by the Service's unlawful denial of his I-751 petition

4.      This Court has jurisdiction over both causes of action, pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202, to issue an order declaring that the Service's actions alleged in this complaint are unlawful.

### III.    <u>VENUE</u>

5.      Venue of this action is proper under 28 U.S.C. § 1391(e).  Plaintiffs currently reside within this District, and Defendant Andrea Quarantillo maintains her office in this district.

### IV.    <u>PARTIES</u>

6.      Plaintiffs Yang, Tong Xi and Ni, Yan Yun are husband and wife.  Ms. Ni has been granted asylee status.  Ms. Ni has filed an application for asylee relative petition on behalf of her

husband, which has been denied by the Defendants.

7.      Defendant Mary Ann Gantner is sued in her official capacity.  She is the

New York City District Director of USCIS.  She is the Secretary of Homeland Security's

designate for the New York City District, charged with the duty of administration and

enforcement of all the functions, powers, and duties of USCIS.  As such, she is responsible for

the administration of immigration benefits and services, including asylee relative petitions.

## V.    EXHAUSTION

8.      The plaintiffs have exhausted all administrative remedies available to them.

During the course of Mr. Yang's deportation proceedings, the Immigration Judge and Board of

Immigration Appeals ruled that they did not have jurisdiction over the application for asylee

relative and that only the USCIS could adjudicate the petition.  See also 8 C.F.R. 208.21(c).  The

regulations explicitly provide that there is no administrative appeal of the denial of an asylee

relative petition.  See 8 C.F.R. § 208.21(e).

## VI.    FACTS

9.      Mr. Yang, Tong Xiang, is 45-year-old married male, native and citizen of China.

10.     He is married to Ms. Ni, Yan Yun.

11.     Mr. Yang has one teenage son, Yang, Yao Jia, who is currently living in China

awaiting emigration to the United States on the basis of his mother's grant of asylee status in the

United States.

12.     Mr. Yang entered the United States without inspection on or about February 6,

1990.

13.     As a result, on or about March 29, 1990, Mr. Yang was placed in deportation

3

proceedings under former INA § 242, 8 U.S.C. § 1230 (1995)  with the issuance of an Order to

Show Cause ("OSC").  The OSC is a charging document in deportation proceedings that contains

factual allegations and deportability charges against an alien.  See INA § 242B(a)(1), 8 U.S.C. §

1252b(a)(1) (1995).

14.    The OSC charged Mr. Yang with deportability under former INA § 241(a)(2), 8

U.S.C. § 1251(a)(2) (1950), as an alien who entered the United States without inspection.

15.    However, on or about October 23, 1990, the deportation proceedings against Mr.

Yang were administratively closed by an Immigration Judge in New York.

16.    On or about April 4, 1994, Mr. Yang pleaded guilty in the United States District

Court for the Southern District of New York to conspiracy to defraud the Internal Revenue

Service in violation of 18 U.S.C. § 371.  He was sentenced to thee years supervised release and a

$50 special assessment by the Court.

17.    On or about May 29, 1994, Mr. Yang applied for adjustment of status pursuant to

the Chinese Student Protection Act ("CSPA").

18.    Prior to his interview on the adjustment of status application, Mr. Yang applied

for and was granted advance parole by the Immigration and Naturalization Service ("INS") (now

known as the U.S. Immigration and Customs Enforcement ("USICE")) to travel outside of the

United States.

19.    Mr. Yang traveled on the advance parole.

20.    Upon his return to the United States, Mr. Yang was paroled into the country to

pursue his adjustment of status application.

21.    On or about May 24, 2000, Mr. Yang's wife, Ni, Yan Yun, entered the United

States as a visitor.

22.    Subsequently, Ms. Ni sought asylum on the basis of China's coercive family planning policy.

23.    On December 4, 2000, the INS granted Ms. Ni conditional asylum pending the availability for a visa for a final grant of asylum.

24.    Thus, Ms. Ni was required to wait for the condition to be removed before she would have a final grant of asylum.

25.    On April 1, 2003, the USCIS denied Mr. Yang's application for adjustment of status on the basis that his 1994 conviction for conspiracy to defraud the IRS constituted a crime involving moral turpitude, which rendered him inadmissible to the United States under INA § 212(a)(2)(A)(i), 8 U.S.C. § 1182(a)(2)(A)(i).

26.    That same day, the USICE detained Mr. Yang in New York and then transported him to Pennsylvania, where he was detained at the Berks County Jail without bond.

27.    At a master calendar hearing on October 23, 2003, the USICE moved to terminate the deportation proceedings against Mr. Yang and sought to place him in removal proceedings with the issuance of a Notice to Appear ("NTA") dated October 22, 2003.  The NTA is a charging document in removal proceedings that contains factual allegations and removability charges against an alien.  See INA § 239, 8 U.S.C. § 1229.  The NTA classified Mr. Yang as an "arriving alien."

28.    Mr. Yang  was classified as such because after obtaining a criminal conviction, he traveled abroad pursuant to a valid advance parole and sought to reenter the United States pursuant to the advance parole.  See 8 C.F.R. § 1.1(q) (2006).  The NTA charged Mr. Yang with

removability pursuant to INA § 212(a)(7)(A)(i)(I), 8 U.S.C. § 1182(a)(7)(A)(i)(I), as an alien not

in possession of a valid travel document; INA § 212(a)(2)(A)(i)(I), 8 U.S.C. §

1182(a)(2)(A)(i)(I), as an alien convicted of a crime involving moral turpitude within five years

of entry; and INA § 212(a)(6)(C)(i), 8 U.S.C. § 1182(a)(6)(C)(i), as an alien who seeks to procure

admission into the United States through fraud of willful misrepresentation.  The INA §

212(a)(6)(C)(i) charge was based upon Mr. Yang's failure to disclose his conviction on his

adjustment of status application.

29.     Mr. Yang, through counsel, opposed the USICE's termination of deportation

proceedings and sought to renew his adjustment of status application before the Immigration

Judge.

30.     On October 23, 2003, the Immigration Judge issued an order terminating the

deportation proceedings, so that the NTA could formally be filed with the Immigration Court.

31.     On November 18, 2003, the USICE issued a Form I-261 in the newly commenced

removal proceedings against Mr. Yang, and alleged that Mr. Yang was an arriving alien, having

last arrived in the United States on July 13, 1996, at which time he was paroled to pursue his

adjustment of status application.

32.     By a decision dated December 19, 2003, the Immigration Judge issued an

interlocutory ruling on Mr. Yang's continuing eligibility for adjustment of status pursuant to the

CSPA.

33.     The Immigration Judge concluded that Mr. Yang was eligible for adjustment of

status because regulations permit a Chinese national to seek adjustment of status under the CSPA

after an initial unlawful entry if he has subsequently been paroled.

34.    The Immigration Judge further reasoned that the USCIS did not deny Mr. Yang's adjustment of status application on the basis of Mr. Yang's manner of entry.

35.    Based upon a request for release on parole or bond filed by Bretz & Coven, LLP, on Mr. Yang's behalf, during the first week on January 2004, Mr. Yang was paroled (i.e. released) from immigration custody.

36.    Mr. Yang returned to New York upon his release from immigration custody. Since he was no longer detained in Pennsylvania, the USICE filed a motion to change venue to New York, and Mr. Yang's removal case was transferred to New York on or about January 9, 2004.

37.    At a hearing before an Immigration Judge in New York, Mr. Yang renewed his application for adjustment of status.

38.    On May 3, 2005, Ms. Ni was granted asylum status.

39.    While his case was pending, Mr. Yang was arrested in Texas on or about May 13, 2005, for allegedly smuggling aliens. He was detained by the USICE in Texas and remained in USICE custody for the remainder of his administrative proceedings.

40.    On or about June 13, 2005, Mr. Yang's wife filed with the USCIS form I-730, Refugee/Asylee Relative Petition on Mr. Yang's behalf, on the basis of her asylum grant.

41.    The purpose of filing form I-730 is to confer asylum benefit to a spouse or a child based upon the principal applicant's grant of asylum. See 8 C.F.R. § 208.21(c).

42.    At the same time, Ms. Ni also filed a form I-730 for her minor son, Yang, Yao Jia.

43.    At a hearing on July 11, 2005, the USICE issued another Form I-261, in which Mr. Yang was charged with removability under INA § 212(a)(6)(E)(i), 8 U.S.C. §

7

1182(a)(6)(E)(i), as an alien smuggler.

44.    The Immigration Judge was aware that Ms. Ni had filed an I-730 petition for Mr. Yang.  He contemplated that the fact the I-730 was filed may "trump everything else." Nevertheless, the Immigration Judge  went on with the removal proceedings without ever considering administrative closure or termination of proceedings.

45.    On August 30, 2005, the Immigration Judge rendered his oral decision and denied Mr. Yang's adjustment of status application as a matter of discretion.

46.    While the Immigration Judge acknowledged in his decision that Mr. Yang's wife was granted asylum, nowhere in his decision did the Immigration Judge mention the fact that he was aware that Mr. Yang's wife had filed an I-730 petition to confer her asylum benefit onto her husband.

47.    Mr. Yang appealed the Immigration Judge's decision to the Board.  In his brief on appeal, Mr. Yang argued that the Immigration Judge should have either terminated or administratively closed the proceedings pending the I-730 petition, since Mr. Yang is a derivative beneficiary of his wife's asylee status.

48.    While Mr. Yang's appeal was pending at the Board, by a notice dated December 8, 2005, the USCIS approved the I-730 petition for Ms. Ni and Mr. Yang's son, Yang, Yao Jia. Based upon this approval notice, Yang, Yao Jia will be able to join Ms. Ni here in the United States and will be granted the same asylee status as was granted to Ms. Ni.  8 C.F.R. § 208.21.

49.    While Mr. Yang's son's I-730 petition was approved, Mr. Yang's petition remained pending.

50.    By a decision dated December 30, 2005, the Board dismissed Mr. Yang's appeal.

The Board found, *inter alia*, that Mr. Yang's argument relating to the administrative closure was unavailing, since according to the Board, because the USCIS has sole jurisdiction over his I-730 petition, the Immigration Judge was not adjudicating Mr. Yang's I-730 petition.

51.     On January 25, 2006, Mr. Yang filed a petition for review in the U.S. Court of Appeals for the Second Circuit.  See Yang v. Gonzales, Dkt. No. 06-0327-ag (2d Cir.)

52.     Mr. Yang also filed a timely motion to reconsider with the Board.  In his motion, Mr. Yang argued that the Board erred in affirming the Immigration Judge's failure to hold Mr. Yang's case in abeyance pending the adjudication of the I-730 petition.

53.     The DHS opposed the motion.

54.     By a decision dated February 27, 2006, the Board denied Mr. Yang's motion to reconsider.  The Board concluded, as it did in its December 30, 2005, decision, that because jurisdiction to adjudicate the I-730 lies solely with the DHS, neither the Immigration Judge nor the Board had an obligation to hold the case in abeyance.

55.     On March 29, 2006, Mr. Yang filed a second petition for review with the U.S. Court of Appeals for the Second Circuit.  See Yang v. Gonzales, Dkt. No. 06-1458-ag (2d Cir.) Both petitions were consolidated before the Second Circuit.

56.     On or about April 2006, Mr. Yang was placed upon supervised release by US ICE.  Mr. Yang is currently on supervised release and has fully complied with reporting requirements since his release.

57.     On July 25, 2006, Mr. Yang submitted a brief to the Second Circuit.  The sole issue raised by the brief was whether the Board should have held Mr. Yang's case in abeyance pending the adjudication of the I-730.

58.    After Mr. Yang's brief was submitted, Mr. Yang entered into a series of stipulations with the Government to withdraw his petition for review without prejudice to reinstatement pending the outcome of the adjudication of the I-730.

59.    On May 10, 2007, Andrea Quarantillo rendered a five paragraph decision denying the I-730.  Two of the five paragraphs consist of a single sentence.  The decision states that "the conviction does not bar Mr. Yang from receiving derivative asylum status," but that "it can be used as a factor in weighing whether the discretionary status should be granted."  The decision reasons that as a result of Mr. Yang's conviction, "the credibility of any and all of [Mr. Yang's] evidence may be doubted."  The decision concludes, "[a]t this time the discretionary benefit sought for the beneficiary Tong Xiang Yang is denied."

60.    On May 30, 2007, Mr. Yang entered into a stipulation with the Government to withdraw his petitions for review with prejudice because they had become moot.

## VIII.    CLAIM FOR RELIEF

### FIRST CAUSE OF ACTION

**(The District Director Failed to Take into Account
that the Regulations are Not Discretionary)**

61.    Plaintiffs, through their attorneys, realleges the allegations set forth in paragraphs 1 through 60 of this complaint.

62.    The District Director's decision fails to cite or consider any regulations.

63.    The regulations at 8 C.F.R. § 208.21(a) set forth the eligibility requirements for the admission of the asylee's spouse and children.  This regulation provides:

In accordance with section 208(b)(3) of the Act, a spouse, as defined in section 101(a)(35) of the Act, 8 U.S.C. 1101(a)(35), or child, as defined in section

101(b)(1) of the Act, also may be granted asylum if accompanying, or following to join, the principal alien who was granted asylum, unless it is determined that the spouse or child is ineligible for asylum under section 208(b)(2)(A)(i), (ii), (iii), (iv) or (v) of the Act for applications filed on or after April 1, 1997, or under Sec. 208.13(c)(2)(i)(A), (C), (D), (E), or (F) for applications filed before April 1, 1997.

64.     While the regulation begins with language that indicates admission of the asylee's spouse and children is discretionary (i.e., "may be granted asylum"), the discretionary language is qualified (i.e.,"unless . . .").

65.     The District Director's decision correctly concludes that Mr. Yang's conviction does not bar Mr. Yang from receiving derivative asylum status.

66.     The regulations at 8 C.F.R. § 208.21(f) provides the burden of proof required for a grant of derivative asylum status.  The regulation only discusses that the alien must establish a *bona fide* familial relationship to the alien who received asylum.

67.     The regulation, 8 C.F.R. § 208.21(f),  does not provide indicate that as part of the alien's burden of proof, the alien must demonstrate that he or she is entitled to asylum as a matter of discretion.

## SECOND CAUSE OF ACTION

(*Assuming Arguendo* that the I-730 is Discretionary,
then the District Director's Decision is an Abuse of Discretion)

68.     Plaintiffs, through their attorneys, realleges the allegations set forth in paragraphs 1 through 67 of this complaint.

69.     Assuming *arguendo* that the determination of derivative asylee status is not mandatory upon the demonstration of a *bona fide* familial relationship, the District Director's decision is an abuse of discretion.

11

70.     An abuse of discretion is a legal error that is subject to review by this Court.

71.     The District Director's decision states that "Mr. Yang's conviction for fraud against the United States also tends to cast a shadow on his testimony." The District Director's decision concludes that, "[t]herefore the credibility of any and all of your evidence may be doubted."

72.     However, the District Director's decision fails to state what portion of Mr. Yang's testimony was found to be lacking in credibility or what inconsistencies exist in the record.

73.     The District Director's decision fails to explain why Mr. Yang's credibility is relevant to whether or not he should be granted derivative asylee status.

74.     The District Director's decision is an abuse of discretion because it finds Mr. Yang to be lacking in credibility without identifying inconsistencies in the record or why his lack of credibility would be relevant to whether or not he should be granted derivative asylee status.

75.     The District Director's decision concludes, "[t]herefore the credibility of any and all of your evidence may be doubted." This portion of the District Director's decision is an abuse of discretion for two reasons. The first is that it is irrational to conclude that Mr. Yang's conviction should render all of his evidence, including extrinsic evidence, in doubt. The second is that the statement is inconclusive because it states, "any and all," so that it is not actually clear whether any of Mr. Yang's evidence was relied upon.

76.     Balancing of positive and negative equities is required for discretionary decisions and the failure to engage in meaningful balancing of the equities is an abuse of discretion.

77.     The District Director's decision does not engage in any type of meaningful balancing of the equities.

12

## IX.    <u>PRAYER FOR RELIEF</u>

**WHEREFORE**, Plaintiffs pray this Honorable Court to grant the following relief:

(1)     Issue an Order declaring that the Service's denial of the I-730, petition for asylee

relative petition is unlawful,

(2)     Issue an Order directing Defendants to either grant Mr. Yang asylee status or to

render a new decision that properly considers all of the equities.

(3)     Grant any other and further relief that this Honorable Court may deem just and

proper.

Dated:  New York, New York
        June 20, 2007

                                        Respectfully submitted,

                                        **BRETZ & COVEN, LLP**
                                        305 Broadway, Suite 100
                                        New York, NY 10007
                                        (212) 267-2555


                                        <u>s\Matthew L. Guadagno</u>
                                        Matthew L. Guadagno (MG5191)
                                        Kerry W. Bretz
                                        Jules E. Coven
                                        *Attorneys for the Plaintiff*

13

**VERIFICATION**

Matthew L. Guadagno, under penalty of perjury, states the following:

1.     I am an attorney admitted to practice before this Court.  I am employed by Bretz & Coven, LLP, the attorneys for the Plaintiff of the foregoing Complaint.

2.     I affirm the truth of the contents of the foregoing Complaint upon information and belief.  The sources of my information and belief are documents provided to me by, and conversations with, the Plaintiff.

Dated:          New York, New York
                June 20, 2007

                                                        s\Matthew L. Guadagno
                                                        Matthew L. Guadagno (MG5191)

14